UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
7951 ALBION, LLC d/b/a CLUB AMADEUS,

               Plaintiff,         **MEMORANDUM AND ORDER**

- against -                      2:19-cv-7309 (DRH) (AKT)

CLEAR BLUE SPECIALTY INSURANCE
COMPANY,

               Defendant.
----------------------------------------------------------------X

**APPEARANCES**

**Attorney for Plaintiff**

**ANDREW K. STAULCUP P.C.**
390 N. Broadway 3rd Floor
Jericho, NY 11753
By:   Andrew Staulcup, Esq.


**Attorneys for Defendant**

**GALLO VITUCCI KLAR LLP**
90 Broad Street, 12th Floor
New York, NY 10004
By:   William Parra, Esq.

**BATESCAREY LLP**
191 North Wacker, Suite 2400
Chicago, IL 60606
By:   Jordan S. Steinway, Esq.


**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff 7951 Albion, LLC d/b/a Club Amadeus ("Plaintiff") brings this action seeking a declaratory judgment that Defendant Clear Blue Specialty Insurance Company ("Defendant") owes a duty to defend and indemnify Plaintiff against claims

asserted in an underlying civil lawsuit filed in New York State Supreme Court, County of Kings. Presently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

The following facts, taken from Defendant's Local Rule 56.1 Statement, (Def. Statement of Material Facts ("Def. 56.1") [DE 39-2]), are undisputed, as Plaintiff did not submit a Rule 56.1 Counter Statement, (*see* Def. Reply at 2–3 [DE 22]). A district court, however, "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record" entitles the movant to the relief sought. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Plaintiff, a limited liability company with a single New York-citizen member, owns and operates Amadeus Nightclub at 7951 Albion Avenue, Elmhurst, New York. (Def. 56.1 ¶ 4; Notice of Removal ¶¶ 6–7 [DE 1]). Defendant is an insurance company organized and existing under the laws of North Carolina with a principal place of business in Puerto Rico. (Notice of Removal ¶ 8). Between February 15, 2018 and February 19, 2019, Defendant insured Plaintiff pursuant to a Commercial General Liability insurance contract with Policy Number AE04-00000070-01. (Def. 56.1 ¶ 13). Entered March 10, 2018, the contract's coverages, endorsements, and exclusions included: Coverage A – Bodily Injury and Property Damage Liability; Coverage B – Personal and Advertising Injury Liability; Endorsement – Sublimited Assault or

Battery; Exclusion – Assault and Battery; and Exclusion – Independent Contractors ("Independent Contractors Exclusion").  (Insurance Policy No. AE04-00000070-01 (the "Policy"), Ex. 3 [DE 21-6] to Decl. of Jordan S. Steinway ("Steinway Decl.") [DE 21-3]).  For readability and to avoid redundancy, the precise language of the relevant provisions is recited below where necessary.

On March 21, 2018, the Policy was amended by endorsement of an additional exclusion:  Exclusion – Third Party or Contracted Security ("Contracted Security Exclusion").  (*Id.* at 000095).  Plaintiff contends this exclusion was added "without any consideration" and thus "should not be deemed part of the contract between the parties."  (Pl. Opp. at 11).  According to Plaintiff's President, "the original policy issued did not have the [Contracted Security Exclusion]," he "did not receive any benefit or consideration" for it, and "his understanding [is] that this exclusion does not affect my Assault and Battery policy of $1,000,000."  (Aff. of Mohammad Ali Amanollahi, Ex. C [DE 21-11] to Declaration of Andrew Staulcup [DE 21-8] ("Staulcup Decl.")).  Both parties purport to submit "certified" copies of the Policy; but, consistent with their positions, Defendant's copy contains the Contracted Security Exclusion endorsement and Plaintiff's does not.  (*Compare* Policy at 000094–000095, *with* Ex. B [DE 21-10] to Staulcup Decl.).

On November 11, 2018, nonparty Sabino Coppola visited Amadeus Nightclub and was allegedly "physically detained, assaulted, beaten and battered" by another patron, suffering "serious injuries, . . . pain, shock and mental anguish."  (Am.

Verified Compl. ¶¶ 24, 28[1] (the "Underling Action Am. Compl."), *Sabino Coppola v. Amadeus Nightclub et al.*, Index No. 506969/2019 (N.Y. Sup. Ct., Kings Cnty.) (the "Underlying Action"), Ex. 2 [DE 21-5] to Steinway Decl.). This incident is hereinafter referred to as the "Coppola Altercation." In a lawsuit filed March 29, 2019, Coppola named, among others, Plaintiff and Plaintiff's hired security, Professional Corporate Security Services, Inc. ("PCSS"), as defendants, alleging their negligence caused his injuries. (Def. 56.1 ¶¶ 3, 6; Underling Action Am. Compl. ¶ 26). Defendant has not defended, and is not defending, Plaintiff in the Underlying Action. (Pl. Opp. at 5).

Plaintiff commenced this lawsuit in New York State Supreme Court, Nassau County on November 2, 2019. [DE 1-1]. Defendant removed the action to federal court on December 31, 2019, [DE 1], and moved for summary judgment on December 18, 2020, [DE 21].

**LEGAL STANDARD**

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the

---

[1] Certain paragraph numbers inadvertently repeat in the Underlying Action's Amended Complaint. Unless otherwise noted, citations to paragraphs 21 through 26 therein refer to those on the fourth (*i.e.*, second-to-last) page.

light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v.*

*Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

As the Court's jurisdiction exists pursuant to the parties' diversity of citizenship, the law of the forum state—New York—governs the choice of law over the dispute. *AEI Life LLC v. Lincoln Benefit Co.*, 892 F.3d 126, 132 (2d Cir. 2018). "Under New York law, questions regarding an insurer's duties in respect to events that occurred in New York are governed by New York law." *U.S. Underwriters Ins. Co. v. Beckford*, 1998 WL 23754, at *2 (E.D.N.Y. Jan. 20, 1998) (citing *U.S. Underwriters Ins. Co. v. Congregation B'nai Israel*, 900 F. Supp. 641, 644 n.2 (E.D.N.Y. 1995)). The action concerns Defendant's duties pursuant to an insurance contract as it relates to an altercation that occurred in Queens County, New York.

Def. 56.1 ¶¶ 4, 7–10. New York state law therefore decides the matter, a conclusion with which both parties agree. Def. Mem. at 2–3 [DE 21-2]; Pl. Opp. at 6.

New York adheres to the "general rules of contract interpretation," "giv[ing] full meaning and effect" to all contractual provisions and construing unambiguous provisions in line with "their plain and ordinary meaning." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012); *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267, 878 N.E.2d 1019 (N.Y. 2007). Contract interpretation of "clear and unambiguous terms" is a matter of law. *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002); *Town of Harrison v. Nat'l Union Fire Ins. Co.*, 89 N.Y.2d 308, 316, 675 N.E.2d 829 (N.Y. 1996).

## I. Coverage

Defendant contends the Policy's Independent Contractors Exclusion and Contracted Security Exclusion both eliminate its duty to defend or indemnify Plaintiff in the Underlying Action. Def. Mem. 10–14; *see Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620–22 (2d Cir. 2001); *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310–11, 476 N.E.2d 272 (N.Y. 1984). "An insurer will be called upon to provide a defense whenever the allegations of the [underlying] complaint suggest . . . a reasonable possibility of coverage." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014) (internal quotation marks omitted) (ellipses in original) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 850 N.E.2d 1152 (N.Y. 2006)). "The narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage. Thus, while the duty to

defend is 'measured against the possibility of a recovery, the duty to pay is determined by the actual basis for the insured's liability to a third person.'" *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quoting *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 178, 690 N.E.2d 866 (N.Y. 1997)).

"The insured has the initial burden of . . . establish[ing] coverage where it would not otherwise exist. Once coverage is established, the insurer bears the burden of proving that an exclusion applies." *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220, 774 N.E.2d 687 (N.Y. 2002) (internal citation omitted). Defendant concedes coverage. Def. Mem. at 6 ("[T]he allegations [in the Underlying Action] clearly satisfy the 'bodily injury' prong of Coverage A"); *id.* at 9 ("The allegations [in the Underlying Action] therefore satisfy the insuring agreement of Coverage B."). To the extent the Assault and Battery Exclusion could defeat such coverage, the parties further agree that the Sublimited Assault or Battery Endorsement "revives" it. *Id.* at 10 ("Coppola alleges that he was the victim of an assault and battery, which triggers and revives coverage under Coverages A and B of the CGL Coverage Form."); Pl. Opp. at 8–9.

But the inquiry does not end here, despite Plaintiff's insistence to the contrary. Pl. Opp. at 9. Even if an insurance policy provides coverage, the insurer may nevertheless have no duty to defend or indemnify by virtue of an exclusion. *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73–74, 542 N.E.2d 1048 (N.Y. 1989). The heart of the dispute, then, lies in whether claims arising out of Coppola

Altercation implicate either (i) the Independent Contractors Exclusion or (ii) the Contracted Security Exclusion. Def. Reply at 1 ("The relevant inquiry pertains only to whether one or more exclusions apply to bar coverage [under the Policy]."). Because the Independent Contractors Exclusion suffices to bar coverage, the Contracted Security Exception is not analyzed. *Silverman Neu, LLP v. Admiral Ins. Co.*, 933 F. Supp. 2d 463, 479 (E.D.N.Y. 2013) (Bianco, J.) (declining to address "Financial Institution Exclusion" where "Wrongful Act Exclusion" barred coverage).

## II. Independent Contractors Exclusion

The Policy's Independent Contractors Exclusion has existed from the outset, Pl. Opp. at 12–13, and reads in relevant part:

> This insurance does not apply to, and we shall have no duty to defend any insured or to pay any sums with respect to any loss, claim, "suit," cost, expense, or liability for damages, including, without limitation, liability for damages because of "bodily injury," "property damage," or "personal and advertising injury," arising out of or in any way related to the actual or alleged acts, omissions, operations, rendition of services, or performance of work by any third party contracted service provider or vendor (or its employees, personnel, staff, or representatives) engaged in an independent trade, business, or profession. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of any third party contracted service provider or vendor (or its employees, personnel, staff, or representatives) engaged in an independent trade, business, service, or profession.

Def. 56.1 ¶¶ 25–26; Policy at 000087. Succinctly, it excludes coverage for injuries "arising out of" or "related to" the "actual or alleged acts" and "omissions" of a "third party contracted service provider . . . engaged in an independent trade, business, or profession." The exclusion's language is unambiguous, a view shared by several courts applying New York law to parallel provisions. *E.g., U.S. Underwriters Ins. Co.*

*v. Landau* ("*Landau*"), 679 F. Supp. 2d 330, 338–40 (E.D.N.Y. 2010) (citing cases); *U.S. Underwriters Ins. Co. v. 203-211 W. 145th St. Realty Corp.* ("*145th St. Realty*"), 2001 WL 604060, at *4 (S.D.N.Y. May 31, 2001).

### A. "Arising Out Of"

The Independent Contractors Exclusion bars coverage for occurrences "arising out of" an independent contractor's acts or omissions. Whether this language applies here is unclear because the Court knows nothing about PCSS's involvement in the Coppola Altercation. The first filed complaint in the Underlying Action fails to mention PCSS—neither as a party nor nonparty—and PCSS first appeared when Coppola amended his complaint nine months later. *Compare* Ex. 1 [DE 21-4] to Steinway Decl., *with* Underlying Action Am. Compl. But even that amended complaint obscures PSCC's involvement – the amended allegations merely added PCSS to a list of boilerplate allegations against parties whose negligence enabled the Coppola Altercation. *E.g.*, Underlying Action Am. Compl. ¶ 26. No specifics beyond legal conclusions exist in the record as presented to this Court.

The phrase "arising out of" in an insurance policy exclusion is "ordinarily understood to mean originating from, incident to, or having connection with." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472, 839 N.E.2d 886 (N.Y. 2005)). To determine whether an exclusion clause with the phrase "arising out of" applies to an occurrence, the New York Court of Appeals "applie[s] a 'but for' test." *145th St. Realty*, 2001 WL 604060, at *4 (citing *Mount*

*Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 350, 668 N.E.2d 404 (N.Y. 1996) and *U.S. Underwriters Ins. Co. v. Val–Blue Corp.*, 85 N.Y.2d 821, 823, 647 N.E.2d 1342 (N.Y. 1995)).

The "but for" test has two parts. First, the exclusion is "[e]xpressed in 'but for' terms." *Id.* at *5. New York Courts have interpreted independent contractor exclusions akin to ours as "exclud[ing] a loss that is [not] incurred 'but for' the operations performed by the independent contractor for the insured." *Id.*; *e.g.*, *Landau*, 679 F. Supp. 2d at 339–40; *Atl. Cas. Ins. Co. v. W. Park Assocs., Inc.*, 585 F. Supp. 2d 323, 326 (E.D.N.Y. 2008); *U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, TZVI*, 2004 WL 2191051, at *6 (E.D.N.Y. Sept. 30, 2004) (quoting *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2004 WL 1497563, at *5 (S.D.N.Y. July 1, 2004)). "The only plausible interpretation of the exclusion is that the insured entities collectively bear the risk of liability arising out of their hiring of independent contractors." *Congregation B'nai Israel*, 900 F. Supp. at 646. The Court adopts this formulation.

Second, the formulation is applied to the matter before the Court. "[I]f the plaintiff in an underlying action or proceeding alleges the existence of facts clearly falling within such an exclusion, and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs," the exclusion triggers and the insurer has no duty to defend or indemnify. *Country-Wide Ins. Co. v. Excelsior Ins. Co.*, 147 A.D.3d 407, 409, 46 N.Y.S.3d 96 (N.Y. App. Div., 1st Dep't 2017) (quoting *Scottsdale Indemn. Co. v. Beckerman*, 120 A.D.3d 1215,

1219, 992 N.Y.S.2d 117 (N.Y. App. Div., 2d Dep't 2014)). The absence of details here makes it impossible to apply the "but for" reformulation to PCSS's role in the Coppola Altercation. This Court cannot confidently say Plaintiff would have avoided a loss "but for" PCSS. *See, e.g.*, *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 370–71 (S.D.N.Y. 2020) ("[T]he Court cannot find that all of the causes of action would not exist *but for* the existence of commission-related allegations." (emphasis in original)). As such, the Court cannot say the Independent Contractors Exclusion's "arising out of" language rules out coverage for the Coppola Altercation.

### B. "In Any Way Related To"

The Independent Contractors Exclusion also bars coverage for occurrences "in any way related to" an independent contractor's "actual or alleged" acts or omissions. Policy at 000087. This language can be applied in a forthright manner: PCSS's negligent acts and omissions, as alleged, undoubtedly relate to the Coppola Altercation. Underlying Action Am. Compl. ¶¶ 19–26. Specifically, PCSS "provided security" at Plaintiff's nightclub, and PCSS's "negligence" in doing so "caus[ed], allow[ed] and/or permit[ed]" Coppola to be "physically detained, assaulted, beaten and battered." *Id.* Patron safety is at the core of any nightclub security's duties – and preventing patron-on-patron violence falls within its ambit. *Cf.* N.Y. Gen. Bus. Law § 89-f(6)(a) ("'Security guard' shall mean a person, other than a police officer, employed . . . [for the] protection of individuals and/or property from harm, theft or other unlawful activity."); *Vega v. Ramirez*, 57 A.D.3d 299, 299, 871 N.Y.S.2d 6 (N.Y. App. Div., 1st Dep't 2008) ("[T]he five or six security guards assigned to the nightclub

that night were enough to deal with any form of disorderliness that could be reasonably expected, . . . and the guards acted appropriately to secure the premises and the patrons inside against the violence taking place just outside by locking the nightclub's doors and remaining inside."). It stands to reason, then, that the Coppola Altercation is "related" to the alleged acts and omissions of PCSS, an independent contractor. *See, e.g.*, *Quanta Lines Ins. Co. v. Invs. Cap. Corp.*, 2009 WL 4884096, at *21 (S.D.N.Y. Dec. 17, 2009) (excluding coverage over "three [investigation] matters generally involv[ing]" the same individual's conduct, whose conduct was subject to an Underlying Arbitration, due to an "exclusion for [c]laims, demands, or investigations 'in any way involving' the Underlying Arbitrations").

The remainder of the exclusion's criteria are met. PCSS "contracted" with Plaintiff to provide a "service" wholly separate from Plaintiff's – namely, providing security versus running a nightclub. Def. 56.1 ¶¶ 4–6; *see* Ex. 4 at 12 [DE 21-4] to Notice of Removal (referencing requirements to a "written contract" between PCSS and Plaintiff). Under these circumstances, the Independent Contractors Exclusion rules out Defendant's duty to defend or indemnify.

Plaintiff argues this "overly broad" reading would mean "all claims of injury would be barred by [Plaintiff] having a vendor on premises." Pl. Opp. at 12. Not so. Unlike, say, a plumbing independent contractor, there is a strong factual nexus between an assault and a security outfit to invoke the exclusion's "in any way related to" phrasing. *Cf., e.g.*, *Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 850 (E.D.N.Y. 1996). Stated another way, PCSS's hired purpose and

the Coppola Altercation neatly fit within the Independent Contractors Exclusion's clear and unmistakable language: They are "related," and, for that reason, coverage is excluded. *See Sea Ins. Co. v. Westchester Fire Ins. Co.*, 51 F.3d 22, 26 (2d Cir. 1995) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648, 609 N.E.2d 506 (N.Y. 1993)). Accordingly, Defendant has no duty to defend or indemnify Plaintiff in the Underlying Action.

### III. The Exclusions' Effect on Coverage

Plaintiff suggests that applying any exclusions to negate coverage for the Coppola Altercation would read the Sublimited Assault and Battery Endorsement out of the contract and fail to give effect to all Policy provisions. Pl. Opp. at 9. Plaintiff correctly notes New York's disfavor of exclusions "swallow[ing] the policy." *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 685, 71 N.E.3d 556 (N.Y. 2017) (internal quotation marks omitted) (quoting *Reliance Ins. Co. v. Nat'l Union Fire Ins. Co.*, 262 A.D.2d 64, 65, 691 N.Y.S.2d 458 (N.Y. App. Div., 1st Dep't 1999)). But so long as an insurance policy "provides coverage for some acts," even if that coverage is "subject to a potentially wide exclusion," a policy, its endorsements, and its exclusions are all enforceable under New York law. *Id.* (internal quotation marks omitted); *Thompson-Starrett Co. v. Am. Mut. Liab. Ins. Co.*, 276 N.Y. 266, 271, 11 N.E.2d 905 (N.Y. 1937) ("[T]he policy and indorsement must be read together and an indorsement in such a case does not abrogate or nullify any provision of the policy unless so stated in the indorsement."). Accordingly, the Court must examine whether the Policy and the Sublimited Assault and Battery

Endorsement harmonize with the Independent Contractors Exclusion and Contracted Security Exclusion, or whether the latter two provisions override any coverage the former two would afford.

The Independent Contractors Exclusion and the Contracted Security Exclusion do not nullify all coverage afforded by Policy and the Sublimited Assault and Battery Endorsement. As put by Defendant, had Plaintiff not "hire[d] [an outside] security company to perform security services at the club," the Sublimited Assault and Battery Endorsement would trigger coverage for "an assault occurring at the premises that potentially implicate[s] [Plaintiff's] conduct." Def. Reply at 6. The Court shares Defendant's reading. Each exclusion makes express use of "third party" and "contracted service," which are qualifying terms absent in the Sublimited Assault and Battery Endorsement. *Compare* Policy at 000087, 000094, *with id.* at 000061.

## CONCLUSION

For the reasons discussed above, Defendant's motion is GRANTED. The Clerk of Court is directed to enter judgment and to terminate the action.

**SO ORDERED.**

Dated: Central Islip, New York      s/ Denis R. Hurley
    July 9, 2021                         Denis R. Hurley
                                                   United States District Judge